[No. H011983. Sixth Dist. May 9, 1995.]

JOSEPH BUNNETT, Plaintiff and Appellant, v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, Defendant
and Respondent.

844

---

## COUNSEL

Atchison, Anderson, Hurley & Barisone, Vincent P. Hurley, Berliner Cohen and Russell J. Hanlon for Plaintiff and Appellant.

O'Melveny & Myers, Linda J. Smith, Neil S. Jahss, Ott, Marquez & Horowitz, Ott & Horowitz and Craig A. Horowitz for Defendant and Respondent.

---

## OPINION

**PREMO, J.**—Plaintiff Professor Joseph Bunnett sued his employer, defendant Regents of the University of California (hereafter, the University), for breach of contract, rescission, breach of fiduciary duty, and breach of the covenant of good faith and fair dealing after defendant denied his application to participate in the "Plus 5" voluntary early retirement incentive program because he was already enrolled in the phased retirement program (hereafter, Phased Retirement). The trial court rendered judgment for defendant following orders granting defendant's motion for summary judgment (as to contract and rescission) and sustaining demurrers (as to fiduciary duty and covenant). We affirm the judgment.

### SCOPE OF REVIEW

The essence of plaintiff's breach of contract, fiduciary duty, and covenant claims is that defendant breached the terms of the contract enrolling plaintiff

in Phased Retirement by denying his later application to participate in Plus 5.[1] Thus, the causes of action are no more than challenges to the administrative decision of a state agency.[2]

■ The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate. (*Bodinson Mfg. Co.* v. *California E. Com.* (1941) 17 Cal.2d 321, 328-330 [109 P.2d 935].) Statutes provide for two types of review by mandate: ordinary mandate and administrative mandate. (Code Civ. Proc., §§ 1085, 1094.5.) The nature of the administrative action or decision to be reviewed determines the applicable type of mandate. (*Tielsch* v. *City of Anaheim* (1984) 160 Cal.App.3d 570, 574 [206 Cal.Rptr. 738].) In general, quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate. (*Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 566-567 [38 Cal.Rptr.2d 139, 888 P.2d 1268]; *Shapell Industries, Inc.* v. *Governing Board* (1991) 1 Cal.App.4th 218, 230-231 [1 Cal.Rptr.2d 818].)[3] But judicial review via administrative mandate is available "only if the decision[] resulted from a 'proceeding in which *by law*: 1) *a hearing is required to be given*, 2) evidence is required to be taken, and 3) discretion in the determination of facts is vested in the agency. [Citations.]' [Citation.]" (*Weary* v. *Civil Service Com.* (1983) 140 Cal.App.3d 189, 195 [189 Cal.Rptr. 442].) Thus, ordinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing. (*Ibid.*)

■ Here, the operative law is the University of California Retirement Plan (hereafter, Plan) of which Plus 5 and Phased Retirement are but

---

[1]Plaintiff concedes that his causes of action for breach of fiduciary duty and breach of the covenant of good faith and fair dealing depend upon the vitality of the contract claim.

[2]"Under article IX, section 9, of the California Constitution the University constitutes 'a public trust' possessing 'full powers of organization and government' and 'all the powers necessary or convenient for the effective administration of its trust. . . .' 'The Regents have the general rule-making or policy-making power in regard to the University [citation], and are (with exceptions not material here) fully empowered with respect to the organization and government of the University . . . .' [Citation.] 'As a consequence, policies established by the Regents as matters of internal regulation may enjoy a status equivalent to that of state statutes. [Citation.]' [Citation.] In *Ishimatsu* v. *Regents of University of California* (1968) 266 Cal.App.2d 854, 864 [72 Cal.Rptr. 756], it was first held that the constitutional grant of power to the University includes the grant of quasi-judicial powers. The decision has found general acceptance." (*Apte* v. *Regents of University of California* (1988) 198 Cal.App.3d 1084, 1090-1091 [244 Cal.Rptr. 312].)

[3]"Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29].) Denial of eligibility for a retirement plan is unquestionably an adjudicatory act. (Cf. *Respers* v. *University of Cal. Retirement System* (1985) 171 Cal.App.3d 864, 870 [217 Cal.Rptr. 594].)

addenda. There is no provision in the Plan for an evidentiary hearing when an application for benefits is denied.[4] Thus, plaintiff's remedy in this case was an action for ordinary mandate, not a civil action. We therefore treat the three referred to causes of action as such.[5]

Plaintiff makes no attempt to justify his invocation of civil remedies other than a lament that he was not afforded an evidentiary hearing. As we have pointed out, however, the absence of an evidentiary hearing does not make mandate inapplicable: it merely affects the form of mandate that must be invoked.

There are subtle differences in the scopes of judicial review for ordinary and administrative mandate. In general, when review is sought by means of ordinary mandate the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support; when review is sought by means of administrative mandate the inquiry is directed to whether substantial evidence supports the decision. (*Shapell Industries, Inc.* v. *Governing Board, supra,* 1 Cal.App.4th at pp. 230-231.) Here, however, the Plan itself provides for the substantial evidence scope of judicial review. (*Ante,* fn. 4.) Since the Plan is unquestionably a matter of the University's internal regulation, the judicial review provision enjoys a status equivalent to that of a state statute and is therefore preeminent. (*Ante,* fn. 2.)

As a qualification, however, we point out that the primary issue in this case is whether the terms of plaintiff's Phased Retirement agreement allowed plaintiff to participate in Plus 5. And the facts are undisputed. In this sense we face a question of law. (*Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 820 [225 Cal.Rptr. 43] [it is a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence].) On questions of law arising in mandate proceedings, we exercise independent judgment. (*McIntosh* v. *Aubry* (1993) 14 Cal.App.4th 1576, 1584 [18 Cal.Rptr.2d 680].)

UNDISPUTED FACTS

Plaintiff began teaching chemistry at the University's Santa Cruz campus in 1966. As a University employee he was a member of the Plan. In general,

---

[4]Under the terms of the Plan, upon denial of an application for benefits, the applicant has a right to review by the assistant vice-president of plan administration by giving written notice setting forth specific reasons and supporting facts. The assistant vice-president then makes an independent determination of the applicant's eligibility. This determination "is final and conclusive . . . if supported by substantial evidence in the record."

[5]Conceptually the rescission cause of action is not a disguised mandate cause of action. We therefore address this cause of action after our principal discussion.

the Plan pays retirees a monthly amount for life based upon age at retirement, years of service, and highest average compensation over three years. The Plan allows revisions, provided that no revision may lessen a member's accrued benefits.

In 1973, defendant revised the Plan to provide for an early retirement program giving enhanced benefits to members electing to retire at 60 years old with 20 years of service.

In 1979, defendant revised the Plan to provide for Phased Retirement. Under this program, a member could choose to retire at a future date, work part-time until that date, but accrue credit for years of service and receive medical, disability, and life insurance benefits as if the employment was full-time.

In 1989, plaintiff signed an agreement with defendant to enroll in Phased Retirement with an effective retirement date of July 1, 1991. The agreement provides that plaintiff's work load was to be 67 percent in 1989-1990 and 33 percent in 1990-1991. It also specified: "During phased retirement, your eligibility for personnel benefits and benefit programs offered by the University will continue. The University's regular contributions will continue for your medical, disability and life insurance plans, while you pay the cost of any voluntary insurance you elect. Life insurance benefits will continue to be based on the full-time salary for your position, but disability insurance benefits will be based on your part-time salary only. You will not accrue sabbatical leave credit for any part-time appointment which is less than half-time. If applicable, vacation leave and sick leave will accrue at the percentage of your appointment. You or your eligible survivors will be eligible to receive the same Disability Income or Survivor Income benefits from [the Plan] that would have been paid if you had been serving full-time on the date of disability or death."

In 1990, plaintiff was a member of the University's committee on faculty welfare. In this capacity he learned that the president of the University intended to propose to defendant that it adopt another amendment to the Plan that ultimately became Plus 5. Plaintiff wrote to the chairman of the committee on this topic: "I understand that the special meeting will deal mainly with the 'golden handshake' early retirement scheme that the President contemplates to present to the Regents at their September meeting. There is one aspect of it that I should like to address especially, for it is of personal interest to me but also would affect the welfare of numerous UC colleagues. [¶] What I have in mind is that the special reward, of increased years of

service credit, that the scheme would offer to qualified professors who decide within a narrow time 'window' next spring to retire as of July 1, 1991, should be made also to professors who previously had made a formal declaration of intention to retire as of that date, including professors in the Phased Retirement program. From a hard-nosed point of view, the administration might think that it had already got what it wanted from those professors, and therefore had no need to offer them an extra reward. On the other hand, considerations of equity dictate that the reward should be made to all who decide to retire by July 1, 1991, whether the decision were made spontaneously or because of the extra inducement. In my view, considerations of equity should prevail."

Defendant adopted Plus 5 in October 1990, as a one-time measure to cope with a severe budgetary shortfall. Plus 5 encouraged employees to retire on July 1, 1991, by offering a lump sum of three months' salary and five years of service credit. It specifically excluded from eligibility those employees who were enrolled in Phased Retirement.

Plaintiff applied to participate in Plus 5. Defendant denied the claim. Plaintiff appealed to the assistant vice president of plan administration, and the assistant vice president denied the appeal. This action followed.

### LANGUAGE OF THE CONTRACT

Plaintiff concedes that his entire case is based upon one sentence in his written agreement to participate in Phased Retirement: "During phased retirement, your eligibility for personnel benefits and benefit programs offered by the University will continue."

Plaintiff contends that the language of this sentence plainly accords him eligibility for future retirement benefits such as Plus 5. At the root of plaintiff's construction of the language is that the sentence is not qualified to exclude future benefits or retirement incentive programs.

We conclude that such a qualification is unnecessary because the words of the sentence only refer to existing benefits.

"The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." (Civ. Code, § 1638.)[6] "The words of a contract are to be understood in their ordinary and popular sense . . . ." (§ 1644.) "The whole of a contract is to be taken

---

[6]Further statutory references are to the Civil Code unless otherwise indicated.

together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." (§ 1641.)

The language of the sentence in question is explicit: it states that a phased retiree's eligibility for benefits offered will continue. The ordinary meaning of the words "offered" and "will continue" used in this combination is that benefits already in existence will continue. This follows, since benefits not in existence cannot "continue." And this construction is consistent with the Plan provision allowing revisions that do not lessen accrued benefits. Moreover, the remainder of the paragraph containing the sentence in question affirms this plain meaning, as it too speaks about benefits already in existence (medical, disability, and life insurance, vacation and sick leave, and survivor benefits) and also about the University's agreement to continue "regular contributions," a phrase which ordinarily means contributions already being made.

Since Plus 5 was not a benefit in existence at the time plaintiff agreed to Phased Retirement, it was not a benefit that plaintiff was eligible for under his phased retirement agreement. And since Plus 5 excluded phased retirees from eligibility, defendant properly denied plaintiff's application to participate in Plus 5.

## AMBIGUITY

■ Plaintiff alternatively contends that the extrinsic evidence introduced via the parties' motion papers shows that the language of the sentence in question is ambiguous.[7] He reasons that summary judgment was precluded because the extrinsic evidence raised a triable issue of fact.

Plaintiff's analysis is erroneous.

---

[7]For example, plaintiff points to evidence that defendant referred to Phased Retirement as a "personnel program" not a "retirement program." He reasons that he was not foreclosed from entering a new retirement program such as Plus 5 because he did not join a retirement program by joining Phased Retirement.

In our view, this evidence does not make plaintiff's Phased Retirement agreement susceptible to the meaning offered by plaintiff. (*Delucchi* v. *County of Santa Cruz, supra*, 179 Cal.App.3d at p. 821 [" ' "The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible." [Citations.]' [Citations.]"].) The label defendant chose to pin on Phased Retirement does not change the facts: plaintiff agreed to retire by a date certain in exchange for considerations; he was paid those considerations in the form of full-time benefits for part-time work and enhanced years of service credit. It would be against defendant's interest to allow plaintiff an option in the Phased Retirement agreement to obtain additional future consideration in exchange for the already agreed retirement. Although there is nothing inherently wrong with a specific contractual

With exceptions not pertinent here, the trial court is not permitted to accept evidence in addition to the administrative record in a mandate proceeding concerning an adjudicatory decision. (*Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 264 [246 P.2d 656].)[8] Its function is not to decide facts but rather to decide a question of law using the applicable deferential rule of review. (Cf. *Western States Petroleum Assn.* v. *Superior Court, supra,* 9 Cal.4th at p. 570 [substantiality of the evidence supporting quasi-legislative administrative decision in ordinary mandate proceeding is a question of law].) Thus, any issues of fact in this case, such as the construction of plaintiff's Phased Retirement agreement in light of the " 'credibility of extrinsic evidence' " or after resolving a " 'conflict in that evidence' " (*Delucchi* v. *County of Santa Cruz, supra,* 179 Cal.App.3d at p. 821) were implicitly resolved against plaintiff at the administrative level. Plaintiff cannot obtain a retrial of such issues by claiming ambiguity. In context, the judicial review in this case was limited to whether defendant's decision, in light of the extrinsic evidence, is supported by substantial evidence.

We decline to further recount (*ante,* fn. 7) the extrinsic evidence cited by plaintiff because it is apparent that, even if the evidence raised an ambiguity in the sentence in question, substantial evidence supports the interpretation against plaintiff's position. This follows by application of the following rule: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." (§ 1649.)

Defendant submitted some evidence of its subjective belief that plaintiff did not believe Phased Retirement to allow a phased retiree to participate in another retirement incentive program.

Plaintiff counters that one cannot invoke the rule of section 1649 by merely offering evidence of the promisor's belief that the promisee understood the agreement in the same way as the promisor.

We agree that it is inherent in this type of contract dispute that the promisor believed that the parties' understandings at the time of contracting

provision that allows this to occur, an interpretation that leads to this result borders on the absurd.

[8]The administrative mandate statute provides: "Where the court finds that there is relevant evidence which, in the exercise of reasonable diligence, could not have been produced or which was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case." (Code Civ. Proc., § 1094.5, subd. (e).) And the Supreme Court has recently held that the same rule applies in ordinary mandate. (*Western States Petroleum Assn.* v. *Superior Court, supra,* 9 Cal.4th at p. 576.)

were consistent. Evidence of the promisor's belief of the promisee's understanding adds little. On the other hand, direct evidence of the promisee's understanding is significant.

Here, plaintiff's 1990 letter to the chairman of the University's committee on faculty welfare is telling evidence that plaintiff did not understand his Phased Retirement agreement to allow a phased retiree to opt into a newly created retirement plan. The letter advocated for a "special reward" and an "extra reward" for professors who had elected Phased Retirement, urged for the inclusion of Phased Retirement professors in Plus 5 because of "considerations of equity," and concluded that "considerations of equity should prevail."

Plaintiff responds that he was not writing the committee on his behalf but in his capacity as a representative of all faculty; that he was not trying to present his case on its legal merits but trying to influence University policy as to all faculty members.

Nevertheless, had plaintiff believed that Phased Retirement professors had a contractual right to join Plus 5 he naturally would have said so in his letter and used his own Phased Retirement agreement as an example.

Application of section 1649 requires that any ambiguity in the sentence in question be construed against plaintiff.

## RESCISSION

■ The linchpin of plaintiff's rescission cause of action is unilateral mistake of fact. (§ 1689, subd. (b)(1).)[9] Plaintiff argues that he submitted evidence of his belief that his Phased Retirement agreement allowed him to retain eligibility for future retirement programs offered by defendant. He reasons that this evidence raised a triable issue of fact precluding summary judgment. We disagree.

"Civil Code section 1689 provides that a party to a contract may rescind the contract if his consent was given by mistake or fraud exercised by or with the connivance of the party as to whom he rescinds . . . ." (*Merced County Mut. Fire Ins. Co.* v. *State of California* (1991) 233 Cal.App.3d 765, 771 [284 Cal.Rptr. 680].) In other words, "rescission is available for a

---

[9]"A party to a contract may rescind the contract in the following cases: [¶] (1) If the consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, . . . of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party." (§ 1689, subd. (b)(1).)

unilateral mistake, when the unilateral mistake is known to the other contracting party and is encouraged or fostered by that party." (*Id.* at p. 772.)

Plaintiff submitted no evidence that defendant knew about his mistake and encouraged or fostered the mistake. At oral argument, plaintiff conceded that the only evidence in this category that he relied upon was a brochure touting Phased Retirement in language like the language in his Phased Retirement agreement.

## DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Elia, J., concurred.