75 Cal.Rptr.2d 102 (1998)
64 Cal.App.4th 75
Emile V. DeCUIR, Plaintiff and Respondent,
v.
COUNTY OF LOS ANGELES et al., Defendants and Appellants.
No. B099918.
Court of Appeal, Second District, Division Four.
May 21, 1998.
Rehearing Denied June 18, 1998.
Review Denied August 12, 1998.
*103 De Witt W. Clinton, County Counsel, S. Robert Ambrose, Assistant County Counsel, Johanna M. Fontenot, Deputy County Counsel, Greines, Martin, Stein & Richland LLP, Martin Stein, and Edward L. Xanders, Beverly Hills, for Defendants and Appellants.
Stephanie M. Davis, Los Angeles, for Plaintiff and Respondent.
CHARLES S. VOGEL, Presiding Justice.

INTRODUCTION
Defendants and appellants the County of Los Angeles, Ronald Maus, Frederick Leonhardt, and David Walters appeal from a judgment after jury trial in favor of plaintiff and respondent Emille V. DeCuir. The jury awarded plaintiff $380,000 in lost future wages based on plaintiffs allegations that defendants' examination process for the civil service position of District Attorney Investigator was unfair and resulted in his receiving a lower score than he deserved, thus precluding his being selected for the position. Defendants contend on appeal that plaintiffs exclusive form of judicial review was a proceeding in mandamus rather than a jury trial, that defendants are immune from damages, and that plaintiff failed to establish causation as a matter of law. We agree with defendants' contention that plaintiff was limited to bringing a mandamus proceeding to challenge defendants' actions. We therefore reverse the judgment on that basis, without the necessity of addressing defendants' remaining contentions.

FACTUAL AND PROCEDURAL BACKGROUND
In March 1989, after submitting an application, plaintiff took the civil service examination for the position of investigator for the Los Angeles County District Attorney's Office. He first passed a qualifying written examination, which enabled him to participate in an oral interview. He received a score of 90 on the oral interview, which score included a 10 point veteran's credit. This score placed him in Band 2 on a six-month eligibility list.[1] At the end of six months, plaintiffs ehgibility expired without his being offered employment as a District Attorney (D.A.) Investigator.
In May 1990, after again submitting an application and passing a qualifying written examination, plaintiff was permitted to participate in an oral interview for the position of D.A. Investigator. He arrived for his interview at 2:30 p.m. and was given 30 minutes to prepare an essay, which would be *104 used during the oral interview but did not receive a formal score.[2] After finishing the essay, plaintiff was then required to wait until approximately 4:15 p.m. for his oral interview to begin. Plaintiffs interview lasted 37 minutes, 10 minutes less than his 1989 interview. At trial, plaintiff testified that defendants rushed the interview and kept checking their watches. The oral interview was conducted by three interviewers (the individual defendants), who happened to be the same three who interviewed plaintiff in March 1989.
In scoring applicants, each interviewer completed an evaluation form prepared by the District Attorney's personnel office, which required the interviewer to rate the applicants in the following seven categories: education, experience, knowledge of position duties and responsibilities, comprehension and communication skills, demonstrated ability to obtain information from others including the whereabouts of witnesses or suspects, demonstrated ability to prepare and present information for court testimony, and demonstrated ability to use sound judgment while conducting investigations and serving subpoenas and warrants. Unlike the other five categories, the categories for education and experience were scored based upon objective standards. Applicants were rated either "acceptable," "good," or "outstanding" in the education and experience categories. The same three ratings were used for the remaining five categories, in addition to a lower rating of "limited."
Plaintiff received a score of 77 on his oral interview, plus the veteran's credit of 10 points, for a final score of 87, placing him in Band 3 on the six-month eligibility list. Plaintiff reviewed the three evaluation forms for his interview and saw erasure marks where his education rating apparently had been changed from "good" to "acceptable."[3]
Plaintiff filed a letter of protest with the Chief Administrative Office, which rules on any protest regarding examinations given by county departments, acting as the county's director of personnel pursuant to the county's Civil Service Rules. Plaintiff complained that he deserved a "good" rating on education, and claimed there was "too great a contrast" between several ratings he received and the corresponding sections of the evaluation forms where the interviewers wrote in their narrative comments.
The Chief Administrative Office, as well as the District Attorney's Office, investigated plaintiffs protest, concluding that his score was correct. The Chief Administrative Office denied plaintiffs appeal, notifying plaintiff he had failed to identify any error in the determination of his score. The Chief Administrative Office also informed plaintiff he could appeal its ruling to the Civil Service Commission.[4]
Plaintiff filed an appeal with the Civil Service Commission, contending the Chief Administrative Office "misinterpreted the educational qualifications guidelines," and that the interviewers reduced his score by 10 points by changing his education rating after they realized he would receive a 10-point veteran's credit. He also claimed he was entitled to a higher rating in the "communication skills" category, and stated that his interview had been unduly delayed and then rushed, all to his disadvantage.
The Chief Administrative Office wrote to the commission, addressing each of plaintiffs contentions. Thereafter, at a September 5, 1990, meeting, at which plaintiffs counsel and a county representative gave oral argument, the commission determined that a reinterview was warranted, rather than a full hearing on plaintiffs scoring grievance.
*105 A reinterview was scheduled for plaintiff for October 1990. Plaintiff appeared for the interview but objected when he was told to prepare another written essay. He was told the interview could not proceed without his first completing the essay, which he declined to do.
On November 1, 1990, the District Attorney's personnel office informed plaintiff and his attorney that he could reinterview without providing another written essay. The reinterview was scheduled for November 20, 1990.
However, on November 7, 1990, plaintiff again petitioned the Civil Service Commission, stating that he felt it was not in his interest to attempt a reinterview. He repeated his request for a hearing on the merits by the commission, which request the commission denied. Plaintiff then filed a government claim for damages with the county. The claim was rejected.
On March 31, 1992, plaintiff filed a civil complaint for money damages in Los Angeles County Superior Court (the present action). Defendants demurred on the bases that plaintiff had not and could not state a statutory basis for damages, that his exclusive civil service remedies did not include a civil damages suit, and his failure to seek a writ of mandamus precluded a civil damages suit. Defendants' first demurrer and three more which followed were sustained, but with leave to amend. Eventually, defendants' fifth demurrer to plaintiffs fourth amended complaint was overruled. Defendants filed a petition for writ of prohibition or mandate with this court, which was summarily denied. Defendants also filed a motion for judgment on the pleadings in the trial court, which was denied.
A jury trial was held on plaintiffs claims that the examination process and resulting scores were unfair, at the conclusion of which the trial court denied defendants' motion for directed verdict. The jury found in plaintiffs favor and awarded him $380,000 in damages for lost future wages. Judgment was entered on the jury verdict on December 5, 1995.
Defendants filed post-trial motions to vacate and set aside the judgment and for a new trial. The trial court denied the motions. Defendants filed notice of appeal on January 19, 1996.

DISCUSSION
Under the county's Civil Service Rules, which have the force and effect of law,[5] an applicant for employment with the county who believes an error has been made in his or her examination may first file written protest with the Director of Personnel, in this case the Chief Administrative Office. The applicant may then appeal to the commission from the Chief Administrative Office's ruling. However, the commission has discretion whether to grant a hearing or make a decision on the merits based on a review of written materials submitted by the parties.[6]
Rule 1.02 provides: "These Rules are prescribed for the purpose of carrying out the Charter provisions, of assuring the continuance of the merit system, of promoting efficiency in the dispatch of public business, and of assuring all employees in the classified service of fair and impartial treatment at all *106 times subject to Merit System Standards and appeal rights as set forth in these Rules. To these ends, the county will exercise its exclusive right to ... hire or rehire, ... and to determine the methods, means and personnel by which the county's operations are to be conducted." (Italics and bold emphasis added.)
Although he is not a civil service employee, plaintiff, as an applicant for employment within the civil service system, is nonetheless subject to the provisions of the Civil Service Rules. As set forth in the margin, the Rules refer specifically to the grievance procedure to be followed by an applicant for employment who believes an examination rating error has been made. Plaintiff initially pursued these procedures by filing a written protest with the Chief Administrative Office and then appealing to the commission when the Chief Administrative Office upheld his score. The commission determined a reinterview was appropriate, but plaintiff later declined to be reinterviewed, electing instead to again ask the commission for a full hearing. When the commission denied his request, plaintiff filed the present action.
We agree with defendants that in so doing plaintiff failed to pursue the only form of judicial review available to him: a petition for writ of mandate wherein he could attempt to demonstrate to the court that the defendant county had abused its discretion. The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate. (Bunnett v. Regents of University of California (1995) 35 Cal.App.4th 843, 848, 41 Cal.Rptr.2d 567.) We find that in this case, plaintiffs only judicial recourse was such a proceeding.
As occurred in Bunnett, plaintiff attempts to justify bringing a civil action for damages by pointing out that under the Rules the commission had the discretion to deny him an evidentiary hearing. (See Bunnett, supra, at p. 849, 41 Cal.Rptr.2d 567; see also Rule 4.03, subd. B.) However, as further discussed below, the absence of an evidentiary hearing does not make mandate inapplicable; it merely affects the form of mandate that must be invoked. (Bunnett, supra, at p. 849, 41 Cal.Rptr.2d 567.) Of the two types of review by mandate, ordinary mandate (Code Civ. Proc., § 1085) rather than administrative mandate (Code Civ. Proc., § 1094.5) is the type applicable here, since ordinary mandate is used to review adjudicatory actions or decisions when the agency was not required to hold an evidentiary hearing. Judicial review by way of administrative mandate is available only if the decision resulted from a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the agency. (Bunnett, supra, at p. 848, 41 Cal.Rptr.2d 567.) When review is sought by means of ordinary mandate, generally the court's inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support. (Id. at p. 849, 41 Cal.Rptr.2d 567.)
Plaintiff relies on Fuchs v. Los Angeles County Civil Service Com. (1973) 34 Cal. App.3d 709, 110 cal.Rptr. 311 for the proposition that because he has no right to a hearing he has no obligation to pursue a petition for ordinary mandate and, therefore, is entitled to proceed directly with a civil action for damages. Plaintiff misinterprets and misapplies Fuchs.
Fuchs was a Los Angeles Deputy District Attorney, grade IV, who applied for a promotion that required completion of a civil service examination and oral interview. Fuchs was dissatisfied with the scores he received on both the examination and oral interview. When Fuchs did not qualify for the promotional list, he appealed his score to the Los Angeles Civil Service Commission. The commission denied Fuchs a hearing. Fuchs sought relief by filing for a writ of mandate or certiorari to compel a hearing by the commission to present his objection to the design, grading, and conduct of the promotional examination. The trial court denied him relief and its judgment was affirmed on appeal.
At the time of the Fuchs case, the Civil Service Rules were substantially the same as those applicable in the present matter. Except in cases of discharge, demotion or reduction, *107 or suspension in excess of five days, a hearing is only available at the discretion of the commission. On that basis, Fuchs could not sustain his claim that he was entitled to a hearing as a matter of right.
Plaintiff argues that his situation is the same as in Fuchs because having been denied a hearing by the commission he was injured without an available remedy at the administrative level. From that premise, plaintiff reasons that being without a right to a hearing before the commission, he is excused from seeking review by ordinary mandate. Plaintiffs rationale is that "[w]here... a hearing was not granted, review is unavailable; not because there was no record, but rather, because there was no application of administrative law upon which possible abuse could be established and thereby, a determination made as to `... whether the decision was arbitrary, capricious, or entirely lacking in support ... (Bunnett, supra, 35 Cal.App.4th at 849, 41 Cal.Rptr.2d 567).' Once a hearing has been provided, the commission's discretion, as it is applied under the law, is reviewable. However, where a hearing is not required, and no hearing has been granted, there is no statutory provision making the granting of a hearing compulsory."
Plaintiffs premise is flawed and he is not exempted from pursuing the traditional remedy challenging a determination of an administrative agency. The commission's denial of a hearing is itself a reviewable determination. That was the context in which Fuchs's claim was presented and reviewed. The fact that Fuchs did not prevail does not establish that a petition for ordinary mandate will automatically fail. The court will review the application to the commission requesting a hearing and determine if it shows compelling merit so that its denial demonstrates an abuse of discretion. In summary, mandate is not only available to review the action of the commission where there is a hearing, but is the appropriate procedure to test the commission's denial of a hearing. It is noteworthy that the Fuchs court concluded that there was "[n]o evidence ... that the presence of any particular Department of Personnel employee at petitioner's oral interview affected the resulting score, or was prejudicial to the petitioner." (Fuchs v. Los Angeles County Civil Service Com., supra, 34 Cal.App.3d at p. 716, 110 Cal.Rptr. 311.) Implicitly, if the court had concluded there was evidence of prejudice in Fuchs's application for a hearing, the court would have formulated a remedy which could include an order compelling the commission to hold a hearing.
We are particularly persuaded that judicial review by way of a proceeding in mandate was the only remedy available to plaintiff, considering that a civil service employee who has been discharged may not initially bring an action seeking civil damages. (City of Fresno v. Superior Court (1987) 188 Cal.App.3d 1484, 234 Cal.Rptr. 136; Valenzuela v. State of California (1987) 194 Cal.App.3d 916, 920, 240 Cal.Rptr. 45 ["[a]n aggrieved civil service employee must use all agency administrative procedures, including available appellate review, before otherwise resorting to the courts"]. See also Boren v. State Personnel Board (1951) 37 Cal.2d 634, 637, 234 P.2d 981.) "A ... barrier to asserting a claim for damages, particularly in employment discharge cases, is the rule that a separate action for damages may not be instituted until the aggrieved party has pursued a § 1094.5 proceeding and has obtained a final judgment in his or her favor, invalidating the administrative action. This is usually considered a jurisdictional prerequisite, and a demurrer or summary judgment will lie."[7] (CEB, Cal. Administrative Mandamus (2d ed. 1989) § 1.13 at p. 13, and cases cited therein.) A mere applicant for civil service employment, who has no right or entitlement to such employment, is not and should not be entitled to judicial relief or recourse in excess of that provided to a discharged permanent employee, who has a protected property interest in continued employment. (See Eistrat v. Board of Civil Service Commrs. (1961) 190 Cal.App.2d 29, 32-33, 11 Cal.Rptr. 606.)
*108 The record fully supports defendants' contention that plaintiff, in his operative complaint, at trial, or at any other time, made no allegations of discrimination or other practices cognizable under the California Fair Employment and Housing Act (Gov.Code, § 12900 et seq.) or title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), for example, which would have made a civil action for damages appropriate. Plaintiffs having failed to petition the superior court for writ of mandate, the only method of judicial review available to him, the judgment on jury verdict is wholly unsupported and must be reversed.
In view of our conclusion regarding the foregoing issue, we do not find it necessary to address the remainder of the issues raised on appeal by defendants.

DISPOSITION
The judgment is reversed and the trial court is directed to enter judgment in favor of defendants on plaintiffs complaint. Costs on appeal are awarded to defendants and appellants.
EPSTEIN and HASTINGS, JJ. concur.
NOTES
[1] Pursuant to Los Angeles County Civil Service Rules, passing applicants are placed on an eligibility list which is divided into groups or "bands" based upon the applicants' final examination scores. The scoring ranges for the bands are fixed as follows: applicants scoring 95-100 percent are placed in Band 1, applicants scoring 89-94 percent are placed in Band 2, applicants scoring 83-88 percent are placed in Band 3, applicants scoring 77-82 percent are placed in Band 4, and applicants scoring 70-76 percent are placed in Band 5. (See L.A. County Civil Service Rules, rule 11.01, subd. C. All further references to Rules are to the Los Angeles County Civil Service Rules, unless specified otherwise.)
[2] The written essay was not part of the examination process when plaintiff first applied in March 1989.
[3] The District Attorney's Office changed the objective standards for education between 1989 and 1990, redefining a "Bachelor's Degree from an accredited college with specialization in administration of justice, criminology, or police science and administration" from "acceptable" in 1989 to "good" in 1990. Plaintiff had an associate of arts degree in police science and administration, and a bachelor's degree in public affairs.
[4] Rule 4.03, subdivision B, and Rule 7.20 allow an appeal regarding a scoring grievance to the Civil Service Commission, but give the commission discretion to deny a hearing on the merits.
[5] Rule 1.01 states that "Pursuant to the California Constitution and the Charter of the [C]ounty of Los Angeles, the Los Angeles County board of supervisors does prescribe and adopt these Rules, which shall have the force and effect of law."
[6] Rule 7.20, "Protests against ratings to the director of personnel," provides in pertinent part: "If the applicant believes an error has been made... in the rating given him/her on any part of the examination, or that any other error has been made, ... the applicant may ... make a protest in writing stating specifically where an error has been made.... Upon receipt of a written protest or request for re-scoring or re-rating, a review of the protest shall be made by the director of personnel.... Any person aggrieved may appeal to the commission [from] the rulings of the director of personnel pursuant to Rule 4...." Rule 4.03, subdivision B, provides that "In all other cases [other than regarding discharge or reduction of a permanent employee (Rule 4.03, subd. A)] provided for in Rule 4.01 [which refers to applicants for employment], the commission may, at its discretion, grant a hearing or make its decision on the merits based on a review of written materials submitted by the parties concerned...." (Italics added.)
[7] Although reference is made only to Code of Civil Procedure section 1094.5, the same barrier applies to actions brought pursuant to the ordinary mandate procedures specified in Code of Civil Procedure section 1085.