[No. C053033. Third Dist. Apr. 10, 2008.]

300 DeHARO STREET INVESTORS, Plaintiff and Appellant, v. DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, Defendant and Respondent.

## Counsel

Jay-Allen Eisen Law Corporation, Jay-Allen Eisen and C. Athena Roussos for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, Tom Greene and Mary E. Hackenbracht, Assistant Attorneys General, Teri H. Ashby and Kenneth J. Pogue, Deputy Attorneys General, for Defendant and Respondent.

## Opinion

**SIMS, Acting P. J.**—Following the trial court's sustaining of a demurrer without leave to amend, plaintiff 300 DeHaro Street Investors appeals from a dismissal of its third amended complaint alleging that defendant Department of Housing and Community Development (the Department) breached a contract (Regulatory Agreement) by denying plaintiff's request to increase rents in an apartment building for which plaintiff received a low-interest loan in exchange for renting units to low-income households under a statutory and regulatory scheme (Health & Saf. Code, § 50660 et seq.; Cal. Code Regs., tit. 25, § 7670 et seq.). The Regulatory Agreement, as well as the underlying statutory/regulatory scheme, called for the Department to approve specified rent increases if plaintiff proved specified matters to the Department's satisfaction. Plaintiff challenges the trial court's conclusions that dismissal was warranted because (1) plaintiff's complaint was uncertain as to whether it alleged the rent increase was mandatory or discretionary, and (2) plaintiff's sole avenue for relief for a discretionary increase was a petition for writ of mandate (Code Civ. Proc., § 1094.5)[1] rather than a breach of contract and declaratory relief action.[2] We shall conclude plaintiff's complaint pled a viable cause of action for breach of contract and that plaintiff may also pursue his claim for declaratory relief. We shall therefore reverse the judgment.[3]

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The judgment refers only to "writ of mandamus" without specifying section 1085 (traditional mandamus) or section 1094.5 (administrative mandamus). In the trial court, the Department raised only section 1094.5, not section 1085. On appeal, the parties discuss both, and the Department argues *either* section 1094.5 *or* section 1085 applies. We shall therefore discuss both types of mandamus. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 959 [230 Cal.Rptr. 192] [appellate court may consider new theories on appeal following sustaining of demurrer].)

[3] On May 4, 2007, the Department filed in this court a request for judicial notice of a transcript of an audiotape of the trial court hearing on the demurrer to the third amended complaint. We previously denied the Department's request to augment the record with the same transcript. Plaintiff opposes the request on the grounds there was no court reporter at the hearing and no stenographic record, and electronic recordings are not official records that may be used on appeal. We need not address this point because we deny the request for judicial

## BACKGROUND

Health and Safety Code section 50670 authorizes the Department to establish a Special User Housing Rehabilitation Program (the Program) under which it may make deferred-payment loans to sponsors[4] for the rehabilitation or the acquisition and rehabilitation of rental housing developments to be occupied by eligible households of very low and low income. The statute provides: "Prior to disbursement of any funds pursuant to this section, the department shall enter into a regulatory agreement with the sponsor which provides for the limitation on profits in the operation of the rental housing development. . . . [¶] Upon recordation of the agreement in the office of the county recorder in the county in which the real property subject to such agreement is located, the agreement shall be binding upon the sponsor [for the loan term up to 30 years]." (Health & Saf. Code, § 50670, subd. (d).) As pertinent to this case, "[t]he department shall fix and alter, from time to time, a schedule of rents on each development as may be necessary to provide residents of the rental housing development with affordable rents, to the extent consistent with the financial integrity of such development. No sponsor shall increase the rent on any unit without the prior permission of the department which shall be given only if the sponsor affirmatively demonstrates that such increase is required to defray necessary operating costs or to avoid jeopardizing the fiscal integrity of the housing development." (Health & Saf. Code, § 50670, subd. (e).) A Department regulation for the program states in part that the sponsor may request a rent increase if it can demonstrate, to the department's satisfaction, that the increase is necessary due to

---

notice on a different ground—there is no declaration that the transcript accurately reflects what occurred at the hearing. A deposition reporter (who was not at the hearing, as far as we know) who transcribed the tape signed a statement (not under oath) "certify[ing]" that the transcript matched the tape to the best of his ability. The deputy attorney general (DAG) submitted a declaration attesting he (1) listened to a copy of the tape obtained from the court and determined it accurately reflected the hearing, (2) sent the tape to a deposition reporter, (3) received back the transcript, (4) "compared" the transcript to the tape, (5) submitted the transcript only, per information from our court clerk, but would make the tape available if we want it, and (6) the tape and the transcript are true and correct copies from his files. What the declaration failed to attest to was whether the transcript matched the tape, i.e., whether the transcript accurately reflected what happened at the hearing. The DAG said he compared the transcript to the tape, but he did not say they matched. He said the transcript is a true copy from his files, but he did not say the transcript matched the tape or accurately reflected what happened at the hearing. Accordingly, we deny the May 4, 2007, request for judicial notice of the transcript and disregard the Department's reliance on it.

[4] A "sponsor" is "any individual, joint venture, partnership, limited partnership, trust, corporation, cooperative, [etc.], certified by the department as qualified to own, manage, and rehabilitate a rental housing development. A sponsor may be organized for profit or limited profit or be nonprofit." (Health & Saf. Code, § 50669, subd. (c).)

unforeseeable cost increases and to preserve fiscal integrity. (Cal. Code Regs., tit. 25, § 7683, subd. (c).)

Plaintiff filed a series of complaints alleging the Department, by denying plaintiff's request for a rent increase, breached the Regulatory Agreement executed by plaintiff and the Department pursuant to the Program. The original complaint (which, according to the Department, was never served) is not part of the record on appeal (appellant's appendix in lieu of clerk's transcript).

The first amended complaint was a declaratory relief action to interpret the Regulatory Agreement. The Department moved for judgment on the pleadings, arguing in part that, to the extent plaintiff alleged denial of a discretionary rent increase, it had to proceed by petition for writ of (administrative) mandamus under section 1094.5. The Department argued a declaratory relief action is appropriate to enforce mandatory obligations but is not appropriate for review of administrative discretion, for which section 1094.5 is the only proper avenue for relief.[5]

The trial court granted the motion with leave to amend, stating the court was unable to determine from the current pleading whether plaintiff was alleging failure to perform a mandatory or a discretionary act.

The second amended complaint alleged claims for breach of contract and declaratory relief. The Department demurred, arguing the pleading failed to identify whether plaintiff was claiming breach of a mandatory or discretionary nature, and administrative mandamus was plaintiff's sole remedy. The trial court sustained the demurrer, stating the pleading was still uncertain, and if plaintiff was claiming the Department inappropriately exercised its discretionary authority, plaintiff's sole remedy was a section 1094.5 petition. Although the demurrer was sustained without leave to amend, the court later granted plaintiff leave to file a third amended complaint.[6]

---

[5] The Department's position has been that the regulations and the Regulatory Agreement provide for both mandatory and discretionary rent increases, with the so-called mandatory increases provided for in paragraph 10(e) of the Regulatory Agreement, and the so-called discretionary increases provided for in paragraph 10(f) of the Regulatory Agreement. Unlike the Department and the trial court, we view plaintiff's complaint as clearly alleging a rent increase under paragraph 10(f). Whether the complaint characterizes that provision as discretionary or mandatory is without consequence, because that distinction is a conclusion of law to be made ultimately by the court.

[6] The pleading actually filed did not match the proposed pleading attached to the motion for leave to amend, but the Department did not object on this basis.

The third amended complaint (the operative pleading) raised counts for breach of contract and declaratory relief. The pleading alleged plaintiff, a "for profit" developer/contractor bought Castle Garden Apartments (Apartments) in Sacramento County in 1989. In November 1990, plaintiff entered an agreement with the Department pursuant to the Program, whereby plaintiff obtained a low-interest loan to rehabilitate the housing for low-income households. The parties executed a number of documents, including a Regulatory Agreement.

The third amended complaint alleged:

The Regulatory Agreement states it reflects a loan pursuant to the program under Health and Safety Code section 50660 et seq. Health and Safety Code section 50670, subdivision (e), says the Department "shall fix" rents "as may be necessary to provide residents of the rental housing development with affordable rents, to the extent consistent with the financial integrity of such development. No sponsor shall increase the rent on any unit without the prior permission of the department which shall be given only if the sponsor affirmatively demonstrates that such increase is required to defray necessary operating costs or to avoid jeopardizing the fiscal integrity of the housing development." (Health & Saf. Code, § 50670, subd. (e).)

The Regulatory Agreement defines fiscal integrity to mean "that the total of operating income plus funds released pursuant to the Regulatory Agreement from the operating reserve account is sufficient to (1) pay all current operating expenses, (2) pay all current debt service, (3) fully fund for at least twelve consecutive months all reserves established pursuant to the Regulatory Agreement, (4) maintain a debt service coverage ratio as specified in the Regulatory Agreement, and (5) pay other extraordinary costs permitted by the Regulatory Agreement."

The complaint quoted paragraph 10(f) of the Regulatory Agreement, which provides: "Borrower may apply to the Department for a greater rent increase than allowed by paragraph [10(e)], above.[7] *The Department shall grant such increase if the Borrower can demonstrate, to the Department's satisfaction,*

---

[7] As indicated (fn. 5, *ante*), the complaint did not allege that plaintiff requested a rent increase under paragraph 10(e). The paragraph 10(e) increase provides that rents may be increased (1) at a rate not to exceed increases in the consumer price index (CPI) multiplied by the ratio of (a) the previous year's budgeted operating expenses plus required reserves to (b) the previous year's operating income attributed to residential units; or (2) to cover changes in debt service on an adjustable rate mortgage.

that the increase is necessary to pay for unanticipated increases in costs related to the assisted units and to preserve fiscal integrity. The Borrower may not receive a greater rent increase, however, on the grounds that fiscal integrity is threatened by a shortfall in nonresidential income, unanticipated expenses attributable to nonresidential spaces or other financial problems attributable to nonresidential space or nonassisted units." (Italics added.)

Plaintiff alleged it asked the Department, and the Department unreasonably denied, requested rent adjustments, even though the adjustments were supported by unanticipated increases in plaintiff's costs to the assisted units, were necessary to preserve fiscal integrity, and were at or below rental levels allowed by the Regulatory Agreement.

The pleading alleged: "Given that this case involves the Disputed Contract Terms, a paradigm of mandatory rental adjustments versus discretionary rental adjustments is inapplicable, i.e., the requested rent adjustments, and the ensuing dispute, are governed by the parties' intentions, the Contract, and the enabling statutes and regulations. Given the myriad rules of contractual construction, [the Department] has breached the parties' Contract by unreasonably withholding approval of plaintiff's requested rent adjustments."

Plaintiff alleged the parties "construe the Disputed Contract Terms differently. In plaintiff's view, [the Department] breaches the Disputed Contract Terms when it unreasonably withholds approval of requested rent adjustments that would provide for appropriate rental rates for low income and very low income households, and as well, provide revenue sufficient to cover amortized principal, interest, and distributions. In [the Department's] view, the Disputed Contract Terms need not provide for revenue sufficient to cover amortized principal, interest, and distributions even when rental rates generating such revenue would be at or below permissible rates for low income and very low income households. The Disputed Contract Terms should be construed in accordance with the parties' intentions, the Contract provisions, the enabling legislation, and [the Department's] regulatory provisions."

The third amended complaint then quoted statutes, regulations, and contract provisions which allegedly showed the parties' intention that rents would cover amortized principal, interest, and distributions, as long as rents remained at or below specified levels. The pleading alleged the Department loaned plaintiff approximately $1.9 million for 40 years at the below market

rate of 3 percent; plaintiff has rented 54 of the Apartments' 67 units to low-income households during the 40-year loan period; and the Department was to approve annual rental rates for the 54 units that (a) did not exceed an arithmetic formula set forth in the Contract, and (b) permitted plaintiff to cover its operating expenses, debt service, and distributions (when appropriate) in order to encourage private owners like plaintiff to provide affordable rental units.

The complaint alleged, "The Contract includes no hearing process (and none occurred here) if a dispute arises between the parties as to the annual rental rates for the affected 54 units of the Apartments."

The complaint alleged that for 2002 and thereafter, the Department breached the contract by not approving rental rates that (a) did not exceed the contract's maximum levels, and (b) covered plaintiff's operating expenses, debt service, and distributions. The complaint alleged the Department's breach of the contract damaged plaintiff by resulting in less rental income than permitted by the contract, in an amount in excess of $25,000.

The Department demurred to the third amended complaint, arguing (1) the pleading was still uncertain in that it failed to identify whether plaintiff was claiming breach of mandatory or discretionary authority; (2) plaintiff received an administrative hearing, albeit of a purely documentary nature, satisfying section 1094.5; and (3) plaintiff failed to state facts sufficient to allege breach of contract.

The trial court sustained the demurrer to the third amended complaint, without leave to amend.

The judgment of dismissal states in part:

"Plaintiff alleges [the Department] breached the agreement when it refused plaintiff's request for an increase in the rental rates. In its complaint, plaintiff fails to distinguish between mandatory and discretionary increases. In fact it appears from . . . the complaint that plaintiff is relying on discretionary increases. At the same time it appears that it is using the discretionary provisions to bolster claims for a mandatory increase.

"The Court has previously ruled that plaintiff must proceed by writ of mandamus if it is challenging a discretionary decision by [the Department]. The Court has also ruled that plaintiff must identify which exercise of [the

Department's] authority it is challenging. Plaintiff continues to ignore the distinction and pleads that 'the paradigm of mandatory rental adjustments versus discretionary rental adjustments is inapplicable.' . . . The Court disagrees.

"Plaintiff must proceed by writ of mandate if it seeks to challenge [the Department's] denial of proposed rent increases based on paragraph 10(f) of the Regulatory Agreement, discretionary increases.

"Since this is plaintiff's fourth attempt to state a cause of action and since plaintiff continues to ignore the Court's directions to distinguish between mandatory and discretionary increases, the Court concludes that plaintiff is unable or unwilling to amend the complaint to state a cause of action. Hence, the demurrer is sustained without leave to amend."

Plaintiff appeals from the judgment of dismissal.

## DISCUSSION

### I. *Standard of Review*

On appeal from a judgment dismissing an action after sustaining a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) We do not, however, assume the truth of contentions, deductions or conclusions of law. (*Ibid.*) Our review is de novo. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].)

### II. *Section 1094.5 Does Not Apply*

The trial court concluded plaintiff's sole remedy was a petition for administrative mandamus pursuant to section 1094.5. We respectfully conclude the trial court erred.

Plaintiff alleged that no administrative hearing occurred in this case, which we accept as true for purposes of reviewing the demurrer and which is supported by law.

■ The writ of administrative mandamus authorized by section 1094.5 applies only to claims challenging administrative orders or decisions "made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the [administrative] tribunal . . . ." (§ 1094.5, subd. (a).) In order for section 1094.5 to apply, the hearing must be required by law. (*Lightweight Processing Co. v. County of Ventura* (1982) 133 Cal.App.3d 1042, 1049 [184 Cal.Rptr. 479].)

■ Here, no statute or regulation required the Department to hold a hearing on plaintiff's request for a rent increase. The parties appear to agree plaintiff simply submitted its request in writing, as it was required to do by the regulations and the Regulatory Agreement. (Cal. Code Regs., tit. 25, §§ 7696, subd. (b), 7683, subd. (f).) As indicated, Health and Safety Code section 50670, subdivision (e), provides, "The department shall fix and alter, from time to time, a schedule of rents on each development as may be necessary to provide residents of the rental housing development with affordable rents, to the extent consistent with the financial integrity of such development. No sponsor shall increase the rent on any unit without the prior permission of the department which shall be given only if the sponsor affirmatively demonstrates that such increase is required to defray necessary operating costs or to avoid jeopardizing the fiscal integrity of the housing development." (Health & Saf. Code, § 50670, subd. (e).) A Department regulation for the program states in part that the sponsor may request a rent increase if it can demonstrate, to the Department's satisfaction, that the increase is necessary due to unforeseeable cost increases and to preserve fiscal integrity. (Cal. Code Regs., tit. 25, § 7683, subd. (c).)

Thus, no hearing was required by law.

■ Where, as here, an agency makes a decision based upon one party's unilateral submissions of information and documents, without taking and considering evidence from opposing parties, no hearing occurs within the meaning of section 1094.5. (*Royal Convalescent Hospital, Inc. v. State Board of Control* (1979) 99 Cal.App.3d 788, 791–792 [160 Cal.Rptr. 458] [unilateral submission of grievance to agency and administrative appeal based solely on information from claimant was not a hearing under section 1094.5].)

The Department argues plaintiff's written request for a rent increase, and the Department's denial of the request based upon its review of his paper-work, constituted a "paper hearing." The Department cites case law such as *Friends of the Old Trees v. Department of Forestry & Fire Protection* (1997) 52 Cal.App.4th 1383 [61 Cal.Rptr.2d 297] (*Friends*), which said that "purely documentary proceedings can satisfy the hearing requirement of . . . section

1094.5, so long as the agency is required by law to accept and consider evidence from interested parties before making its decision." (*Id.* at p. 1391.) The Department cites regulations (Cal. Code Regs., tit. 25, §§ 7683, subd. (f), 7696, subd. (b)) requiring landlords to apply for rent increases in writing.

However, even assuming the Department's review of plaintiff's request could be characterized as a hearing, it does not trigger section 1094.5 review unless the hearing was required by law (*Lightweight Processing Co. v. County of Ventura, supra*, 133 Cal.App.3d at p. 1049), which was not the case here.

Moreover, even if a "purely documentary" hearing can satisfy section 1094.5, there must still be something in the nature of a hearing, i.e., an adversarial process in which the agency resolves disputed facts after affording interested parties an opportunity to present evidence. The cases cited by the Department involved input from opposing parties. (*Carrancho v. California Air Resources Board* (2003) 111 Cal.App.4th 1255, 1270 [4 Cal.Rptr.3d 536] [public meetings, workshops, and ample opportunity for input from public regarding plan to divert rice straw left over after harvest]; *Friends, supra*, 52 Cal.App.4th at p. 1392 [defendant's approval of a timber harvesting plan by law provided numerous opportunities for public and agency input and required defendant to respond in writing to environmental concerns].)[8]

Black's Law Dictionary (7th ed. 1999) at page 725 defines "hearing" in administrative law as "[a]ny setting in which an affected person presents arguments to an agency decision-maker . . . ." Ballentine's Law Dictionary (3d ed. 1969) at page 553 defines "hearing" in administrative law as "[t]he presentation of a case or defense before an administrative agency, with opportunity to introduce evidence in chief and on rebuttal, and to cross-examine witnesses, as may be required for a full and true disclosure of the facts."

Section 1094.5 contemplates an adversarial hearing grounded in due process. Thus, *McGill v. Regents of University of California* (1996) 44 Cal.App.4th 1776 [52 Cal.Rptr.2d 466] (*McGill*) held a trial court erred in applying section 1094.5 review to a university's decision to deny tenure to a mathematics professor. He was reviewed by a variety of committees, with input from the mathematics department and "outside reviewers," but he "had no due process rights to a full adversarial hearing on denial of tenure." (44 Cal.App.4th at pp. 1779, 1785.)

---

[8] The Department also cites *State Board of Chiropractic Examiners v. Superior Court*, a 2007 case formerly published at 148 Cal.App.4th 142 [55 Cal.Rptr.3d 374], which was withdrawn from publication by the California Supreme Court's grant of review on June 27, 2007 (S151705) (after the Department filed its brief), and which in any case did not support the Department because the agency there made findings based on a review of documents submitted by opposing sides—the claimant/employee and the opponent/employer.

Here, no law required the Department to entertain input from interested parties (such as tenants) or to allow plaintiff an opportunity for rebuttal.

We conclude no administrative hearing was required by law, and therefore section 1094.5 does not apply to this case. The trial court thus erred in dismissing plaintiff's case based on section 1094.5.

### III. Breach of Contract Versus Traditional Mandamus

Plaintiff argues its complaint seeks relief for breach of contract, not breach of a legal duty, and therefore traditional mandamus (§ 1085) is either inapplicable or an alternative remedy, and plaintiff should be allowed to choose to pursue its action for breach of contract. The Department argues plaintiff's real claim is not breach of contract but a challenge to an administrative decision exercising discretionary authority allowed by law, and therefore mandamus would be plaintiff's sole remedy, but the complaint lacks sufficient facts to state a mandamus claim.

We shall conclude plaintiff can pursue a breach of contract action.

### A. Alleged Breach Re: Discretionary Rent Increase

We first clarify our understanding of plaintiff's complaint as presenting a dispute about a discretionary rent increase, not a mandatory increase.

As we have indicated (fn. 5, *ante*), the Department's position in the trial court was that the complaint was unclear as to whether plaintiff was claiming a "mandatory" rent increase under paragraph 10(e) of the Regulatory Agreement, or a "discretionary" rent increase under paragraph 10(f). It is true the complaint did not allege whether plaintiff viewed the Department's denial of the rent increase as an "abuse of discretion." However, it is clear from plaintiff's complaint that plaintiff sought a rent increase under paragraph 10(f) (the paragraph for discretionary increases), not paragraph 10(e), of the Regulatory Agreement. Thus, the complaint quoted paragraph 10(f), alleged plaintiff's request for an increase was justified in language parroting paragraph 10(f), and did not quote or use language from paragraph 10(e) in the complaint.

We note the complaint also alleged that, in plaintiff's view, the Department breached the disputed contract terms by "unreasonably" denying the request. We recognize the word "reasonably" appears in a provision of the Regulatory Agreement that may or not apply here, i.e., paragraph 10(c) says the borrower (landlord) shall request approval for rent increases at least 60 days before the end of the fiscal year, and "[p]rovided that the Department

*reasonably* determines that Borrower is in full compliance with all provisions of this Agreement . . . , that Borrower's request is in full conformance with this section and that the amount of the request is in compliance with subsection e. below, Department shall not deny approval of Borrower's request."[9] (Italics added.) Plaintiff says this provision by its own terms applies only to paragraph 10(e) mandatory increases (which are not at issue in this case), not paragraph 10(f) discretionary increases. At this stage, it is not necessary for us to resolve whether or not this paragraph applies. Even if it does not, the contract language quoted in the complaint, for a paragraph 10(f) discretionary rent increase, is that the Department shall grant such increase if the landlord can demonstrate its necessity "to the Department's satisfaction." Reasonableness may be a component of "satisfaction." (*Guntert v. City of Stockton* (1974) 43 Cal.App.3d 203, 209–213 [117 Cal.Rptr. 601].)

■ Moreover, it has long been the rule in California that "where a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. [Citations.]" (*Cal. Lettuce Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 484 [289 P.2d 785], followed in *Perdue v. Crocker National Bank* (1985) 38 Cal.3d 913, 923 [216 Cal.Rptr. 345, 702 P.2d 503].) In *Kendall v. Ernest Pestana, Inc.* (1985) 40 Cal.3d 488 [220 Cal.Rptr. 818, 709 P.2d 837], our Supreme Court applied the *Lettuce Growers* rule to require a lessor, who had the power to approve an assignee of a written lease, to exercise the power "in accordance with commercially reasonable standards." (*Kendall, supra*, at p. 500.) And the rule has been applied to a public entity with the discretionary power to fix rates. (*Orange County Cable Communications Co. v. City of San Clemente* (1976) 59 Cal.App.3d 165, 172 [130 Cal.Rptr. 429].)

We therefore respectfully disagree with the trial court that plaintiff's complaint was fatally uncertain, as failing to plead whether the Department had breached a mandatory or discretionary duty. Read in its entirety, the complaint pleads that the Department breached a discretionary duty by acting in an unfair and commercially unreasonable manner by failing to provide plaintiff with sufficient revenue to cover amortized principal, interest, and distributions.

---

[9] The paragraph goes on to say the request shall be deemed approved if the Department does not act within 60 days of receipt of the request, and the Department may deny a request on the ground it contains inadequate information.

### B. *Plaintiff Can Pursue a Contract Action*

Plaintiff argues it had a viable contract action, and therefore traditional mandamus (§ 1085)[10] was not an available remedy, because mandamus is available only if there is no adequate remedy at law. (§ 1086.)[11] Plaintiff prefers the contract remedy because judicial review in mandamus is more deferential to the agency's decision. (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 849 [41 Cal.Rptr.2d 567] (*Bunnett*) [when review is sought by means of ordinary mandate the inquiry is limited to whether the decision was arbitrary, capricious, or entirely lacking in evidentiary support].)

The Department argues mandamus was the *only* available remedy. According to the Department, the contract at issue "does no more than incorporate the relevant law under statutes and regulations," indeed the contract is titled "Regulatory Agreement," and therefore when the Department denies a discretionary rent increase, it is not breaching a contract but rather applying the law to a set of facts in a quasi-adjudicatory manner. The Department maintains that any challenge to a discretionary administrative action must be by way of mandamus.

We shall conclude plaintiff can pursue its claim in an action for breach of contract.

■ "As a general proposition, mandamus is not an appropriate remedy for enforcing a contractual obligation against a public entity. [Citations.]" (*Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 52 [67 Cal.Rptr.2d 850]; see *Wenzler v. Municipal Court* (1965) 235 Cal.App.2d 128, 132 [45 Cal.Rptr. 54].) There are at least two reasons for this rule: "The first is that contracts are ordinarily enforceable by civil actions, and the writ of mandamus is not available unless the remedy by civil action is inadequate. [Citations.] The other is that the duty which the writ of mandamus enforces is not the contractual duty of the entity, but the official duty of the respondent officer or board. . . . 'Furthermore, the law imposes upon municipal corporations and their officers no special duty to carry out the terms of contracts or to refrain from breaches of contractual relations. They are not singled out, as

---

[10] Section 1085, subdivision (a), states: "A writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station, or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled, and from which the party is unlawfully precluded by such inferior tribunal, corporation, board, or person."

[11] Section 1086 provides: "The writ must be issued in all cases where there is not a plain, speedy, and adequate remedy, in the ordinary course of law."

distinguished from other corporate entities or other individuals, as especially enjoined to observe contractual obligations; and . . . "when [the writ of mandate] is applied for, there must be a clear case to 'compel the performance of an act which the law specially enjoins as a duty resulting from an office, trust or station.' " ' " (*Wenzler, supra*, 235 Cal.App.2d at pp. 132–133, citations omitted [mandamus not available because person seeking return of criminal fines after dismissal of criminal prosecution had adequate remedy at law under quasi-contractual theory].) "For the same reasons mandamus is generally said not to be an appropriate remedy for recovering money. . . . [¶] [Though some cases] have permitted the use of this extraordinary writ in a proceeding against a board or officer where the effect is to enforce payment of a claim. In *Tevis* v. *City & County of San Francisco* [(1954)] 43 Cal.2d 190 . . . [272 P.2d 757], the court said: 'In proceedings involving claims for wages by municipal employees or by parties to a contract with a municipality, it is generally held that an ordinary action at law for damages is adequate, and a writ of mandate will be denied. [Citations.]' " (*Wenzler, supra*, 235 Cal.App.2d at p. 133, citations omitted.)

The Department argues the foregoing cases, cited by plaintiff, are distinguishable because none dealt with an administrative decision. We disagree with the Department's interpretation of the case law.

Thus, *Shaw v. Regents of University of California, supra*, 58 Cal.App.4th 44, involved a university's contract with an employee (a professor) which, pursuant to university policy, required the employee to assign any inventions or patents to the university, in exchange for which the employee would receive 50 percent of net royalties. After the employee was hired, the university revised its policy to reduce the percentage. (*Id.* at p. 47.) Thereafter, the employee came up with a new invention. The university informed him the new invention would be governed by the new policy. He objected and asked the university to honor its contract with him. The university declined, asserting the patent policy was not a contract but merely a personnel policy grounded in the employment relationship. (*Id.* at p. 49.) We affirmed summary judgment in favor of the employee, concluding his patent agreement controlled. "While it is true the University's administrative decisions regarding its faculty are properly reviewed by writ of mandate [citing to cases involving denial of tenure and denial of application to enroll in early retirement program], Shaw does not challenge an administrative decision of the University. He seeks an interpretation of his existing written contract with the University. [¶] As a general proposition, mandamus is not an appropriate remedy for enforcing a contractual obligation against a public entity. [Citations.] Thus, the trial court correctly applied contract principles in resolving the parties' dispute over the patent agreement." (*Id.* at pp. 51–52.)

The Department argues plaintiff does challenge an administrative decision, because the contract merely recited rights and obligations imposed by statute and regulation, triggering the rule that discretionary administrative actions must be challenged by mandamus. However, plaintiff does not challenge a mere administrative decision, but an administrative decision concerning a provision of a contract to which plaintiff and defendant were parties. That the contract incorporated statutes and regulations does not strip it of its contractual nature, because all contracts necessarily and implicitly incorporate all applicable laws in existence when the contract is entered. (*City of Shasta Lake v. County of Shasta* (1999) 75 Cal.App.4th 1, 16 [88 Cal.Rptr.2d 863].)

■ Moreover, the Department *chose* to enter into a written contract with plaintiff. When it did so, it gained contractual rights against plaintiff. But it also agreed that both parties to the contract would have certain remedies for a breach of contract by the other. This is the very essence of what a contract is all about. In the words of the Restatement Second of Contracts, section 1: "A contract is a promise or a set of promises for the breach of which the law gives a remedy . . . ."

The fact that the contract incorporated various statutes verbatim does not prevent the parties from exercising their remedies for breach of contract. When statutory language is included in a contract, it assumes a new legal identity: that of contractual language.[12]

The Department relies on several cases, all of which are distinguishable.

Thus, the Department cites *McGill, supra,* 44 Cal.App.4th 1776, where the university denied tenure to a professor. The professor filed a writ proceeding and a complaint for damages, but the complaint was severed and held in abeyance pending outcome of the writ. The appellate court decided the appropriate mandamus proceeding was traditional mandamus, not administrative mandamus. (*Id.* at p. 1786.) There was no mention of any contract provision at issue in *McGill,* but only a university policy limiting how long a professor could stay employed without being granted tenure. (*Id.* at p. 1779.) Thus, *McGill* did not address the point at issue here—whether an administrative decision concerning a contract to which the administrative agency is party must be decided by mandamus rather than a contract action.

The Department cites *Bunnett, supra,* 35 Cal.App.4th 843, which said, "The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate. [Citation.]"

---

[12] Outside the contract, the statutes do not lose their identity as statutes. It is like someone who has a day job and a night job.

(*Id.* at p. 848.) However, *Bunnett* said *most*, not *all*. *Bunnett* treated a breach of contract case as a petition for traditional mandamus, where a professor sued the university for denying his application to participate in a voluntary early retirement incentive program. The university denied his application because he was already enrolled in the university's phased retirement program at the time the early retirement program was adopted, and the new program specifically excluded from eligibility those employees who were enrolled in phased retirement. (*Id.* at pp. 850–851.) The professor argued his phased retirement contract stated his eligibility for university benefit programs continued, thereby entitling him to this new benefit. (*Id.* at p. 851.) The appellate court construed the contract language against the professor and affirmed summary judgment in favor of the university. (*Id.* at pp. 847–848.) Although the professor claimed a breach of contract, he was really challenging the terms of the university's *new* policy, for which he had no contract and which excluded phased retirement employees from eligibility. Thus, *Bunnett* does not help the Department here.

The Department cites rent control cases holding that landlords who are subject to rent control ordinances and who challenge denials of rent increases must first pursue a writ of mandate before seeking damages against a municipality (for inverse condemnation or civil rights violation). (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1022 [103 Cal.Rptr.2d 711, 16 P.3d 130]; *Kavanau v. Santa Monica Rent Control Bd.* (1997) 16 Cal.4th 761, 782–786 [66 Cal.Rptr.2d 672, 941 P.2d 851].) However, rent control is a matter of ordinance or other legislative action, not contract, and we see nothing in either case indicating the landlord had a contract with the governmental defendant. (*Galland, supra*, 24 Cal.4th at p. 1010; *Kavanau, supra*, 16 Cal.4th at p. 767.)

Buried under a heading that mandamus, not breach of contract, is the sole remedy, the Department claims declaratory relief is not allowed in review of an administrative decision, and declaratory relief is appropriate only to challenge a statute or regulation as being unconstitutional. We reject this point because (1) the Department forfeited it by failing to brief it properly under a separate heading (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521]); and (2) the Department forfeited it by failing to provide adequate legal analysis (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 672–673, fn. 3 [33 Cal.Rptr.2d 13]). The Department merely cites, without development, one case which involved *administrative* mandamus, which we have explained is inapplicable here.

■ We conclude plaintiff may pursue its action for breach of contract and declaratory relief.

Accordingly, the trial court erred in sustaining the Department's demurrer to the third amended complaint.

## DISPOSITION

The judgment of dismissal is reversed. Plaintiff shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)–(2).)

Davis, J., and Hull, J., concurred.