Filed 3/25/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NATHAN G., | F065485 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 12CECG01032) |
| CLOVIS UNIFIED SCHOOL DISTRICT, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County. Carlos A. Cabrera, Judge.

Central California Legal Services and Michael T. Brooks for Plaintiff and Appellant.

Lozano Smith, Ruth E. Mendyk, Sloan R. Simmons and Aimee M. Perry for Defendant and Respondent.

-ooOoo-

This is an appeal from an order of the Superior Court of Fresno County denying a petition for a writ of administrative mandamus under Code of Civil Procedure section 1094.5.[1] On November 30, 2011, Clovis Unified School District (CUSD) involuntarily transferred Nathan G. (Nathan) from Clovis High School (Clovis) to Gateway High School (Gateway), a continuation school, pursuant to Education Code section 48432.5. On March 29, 2012, Nathan petitioned for a writ of administrative mandamus compelling CUSD to set aside the transfer, expunge any mention of said transfer from his academic records, and reinstate him at Clovis.[2] He concurrently filed an ex parte application for an alternative writ of administrative mandamus. CUSD filed an opposition to the application on April 4, 2012, arguing that its decision to involuntarily transfer Nathan was subject to judicial review under section 1085, which governs ordinary mandamus proceedings, because Education Code section 48432.5 does not require a hearing. On May 17, 2012, the superior court evaluated CUSD's action under section 1094.5, determined that substantial evidence supported the findings, and denied writ relief. Nathan graduated on June 5, 2012, and filed a notice of appeal on July 12, 2012.

On appeal, Nathan contends that (1) Education Code section 48432.5 demands reasonable exhaustion of all other means of correction before a student can be involuntarily transferred to continuation school[3] and (2) an involuntary transfer

---

[1]     Unless otherwise indicated, all subsequent statutory citations refer to the Code of Civil Procedure.

[2]     Nathan also petitioned for a writ of ordinary mandamus (§ 1085) and declaratory relief (§ 1060). The superior court dismissed these causes of action as "waived or abandoned" on the basis of *Fidelity National Title Ins. Co. v. Schroeder* (2009) 179 Cal.App.4th 834, 847, footnote 11. Nathan expressly waives these claims on appeal.

[3]     Although Nathan raises this issue for the first time on appeal, we exercise our discretion to consider this question of law. (See *Mitchell v. United National Ins. Co.* (2005) 127 Cal.App.4th 457, 470-471.)

substantially affects a fundamental vested right, necessitating the superior court's exercise of independent judgment on the evidence. CUSD maintains that its administrative decision should have been evaluated under section 1085.[4]

We conclude: (1) Education Code section 48432.5 requires a hearing upon request and administrative actions made pursuant to this statute are subject to judicial review under Code of Civil Procedure section 1094.5; (2) Education Code section 48432.5 does not demand reasonable exhaustion of all other means of correction before a student can be involuntarily transferred to continuation school; and (3) the substantial evidence test is proper because an involuntary transfer does not substantially affect a fundamental vested right.

---

[4] At the outset, we reject CUSD's claims that (1) Nathan lacked standing and (2) Nathan's graduation rendered the appeal moot. Regarding the first claim, "[t]o have standing to seek a writ of mandate, a party must be 'beneficially interested' [citation], i.e., have 'some special interest to be served or some particular right to be preserved or protected over and above the interest held in common with the public at large.' [Citation.]" (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 361-362; accord, § 1086.) Nathan was a beneficially interested party because issuance of the writ would have rescinded the involuntary transfer and reinstated him at Clovis before the end of the school year. (Cf. *Brown v. Crandall* (2011) 198 Cal.App.4th 1, 8 ["A petitioner has no beneficial interest if she will gain no direct benefit from the issuance of a writ and suffer no direct detriment if it is denied."].)

Regarding the second claim, Nathan's graduation did not necessarily moot his appeal. (See, e.g., *Best v. California Apprenticeship Council* (1984) 161 Cal.App.3d 626, 628; *Goldberg v. Regents of the University of California* (1967) 248 Cal.App.2d 867, 873, fn. 6.) Our Supreme Court has established that "an issue does not become moot merely because it is of no further immediate interest to the party who has raised it. If a matter is of general public interest and is likely to recur in the future, a resolution of the issue is appropriate." (*Green v. Layton* (1975) 14 Cal.3d 922, 925.) What process is due a student facing involuntary transfer to continuation school is a matter of significance to students and their families, school boards, and school administrators and likely to recur. (Cf. *John A. v. San Bernardino City Unified School Dist.* (1982) 33 Cal.3d 301, 307.)

# FACTUAL HISTORY[5]

On November 17, 2011, Nathan, then a senior at Clovis, was suspended after he admitted to school officials that he and other students had smoked marijuana prior to their arrival on campus, violating Education Code section 48900, subdivisions (c) and (k),[6] and CUSD's Board Policy No. 2110.[7]  In a letter dated November 17, 2011, his parents were informed of Clovis's decision to recommend involuntary transfer to continuation school or, in the alternative, initiate expulsion proceedings.  The letter further detailed:

> "A meeting has been scheduled on Wednesday, November 30, 2011 …
> with Crystal Cruz, Superintendent's Designee[,] at her office located at
> [CUSD's] Student Services and School Attendance [Department] ….  The
> dual purpose of this meeting is to consider the recommended involuntary

---

[5] The parties stipulated to use the original superior court file instead of the clerk's transcript.  (See Cal. Rules of Court, rule 8.128(a); Ct. App., Fifth Dist., Local Rules of Ct., rule 5, Stipulation for use of original superior court file.)

[6] These provisions specify:

"A pupil shall not be suspended from school or recommended for expulsion, unless the superintendent of the school district or the principal of the school in which the pupil is enrolled determines that the pupil has committed an act as defined pursuant to any of subdivisions (a) to (r), inclusive:  [¶] … [¶]  (c) Unlawfully possessed, used, sold, or otherwise furnished, or been under the influence of a controlled substance listed in Chapter 2 (commencing with Section 11053) of Division 10 of the Health and Safety Code, an alcoholic beverage, or an intoxicant of any kind.  [¶] … [¶]  (k) Disrupted school activities or otherwise willfully defied the valid authority of supervisors, teachers, administrators, school officials, or other school personnel engaged in the performance of their duties."  (Ed. Code, § 48900, subds. (c) & (k).)

[7] According to this policy, any student who is found under the influence of a controlled substance, alcohol, or any other form of intoxicant "shall be immediately suspended by the principal and recommended for consideration for expulsion from the Clovis Unified School District and/or for involuntary transfer."  The administrative record showed that Nathan and his mother signed a form on August 10, 2011, acknowledging that they read and understood the policy and recognized the consequences of violating it.

4.

transfer of your son and/or consider whether to extend your son's suspension pending an expulsion hearing. [¶] At the meeting, you will be informed of the specific allegations, facts and reasons for the proposed transfer to continuation school and will have the opportunity to inspect all documents relied upon, question any evidence and witnesses presented, and present evidence on behalf of Nathan. If your son is transferred to continuation school, none of the persons involved in making the final decision will be on the staff of Clovis High School. [¶] … [¶] If you wish to be present at [the] scheduled meeting, but cannot do so at the stated time, please call Crystal Cruz …. Your presence at the meeting is not required, and the Superintendent's Designee may make the decision whether or not to involuntar[il]y transfer Nathan to continuation school, or to extend Nathan's suspension pending an expulsion hearing, in your absence if you cannot attend within a reasonable period of time."

Nathan and his parents met with Cruz on November 30, 2011. He again admitted that he had smoked marijuana on November 17, 2011. In addition, the administrative record before Cruz indicated that Nathan was involved in an alcohol-related incident a month earlier. Specifically, on or around October 6, 2011, Nathan accompanied other students on a drive to a local grocery store, where one of his peers purchased orange juice to mix with alcohol in her possession. They then brought the mixed drink back to Clovis. Following a code of conduct hearing on October 17, 2011, Nathan, who had been aware that he was in the presence of alcohol, received a two-week suspension from extracurricular activities. The hearing panel, which consisted of Clovis's deputy principal, learning director, and athletic director's designee, advised Nathan about the risks associated with use of a controlled substance and emphasized that more severe consequences would have been imposed had he used such a substance.

In a written decision dated November 30, 2011, Cruz found that Nathan violated Education Code section 48900 and "other means have failed to bring about pupil improvement," noting that he was previously reprimanded for an alcohol-related incident

5.

and other miscellaneous infractions.[8]  Alternatively, Cruz concluded that school officials properly determined that Nathan's presence at Clovis "cause[d] a danger to persons or property or threaten[ed] to disrupt the instructional process" in view of his admissions of wrongdoing.  She ordered his immediate involuntary transfer to Gateway for the remainder of the school year.

## DISCUSSION

### I.    Standard of review

We review de novo questions of law.  (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107; *Ruth v. Kizer* (1992) 8 Cal.App.4th 380, 385; see also *Pomona Police Officers' Assn. v. City of Pomona* (1997) 58 Cal.App.4th 578, 584 ["Where the case involves the interpretation of a statute, we engage in de novo review of the trial court's determination to issue the writ of mandate."].)

### II.    Education Code section 48432.5 requires a hearing upon request and administrative actions made pursuant to this statute are subject to judicial review under Code of Civil Procedure section 1094.5

"The proper method of obtaining judicial review of most public agency decisions is by instituting a proceeding for a writ of mandate."[9]  (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.)  Two such writs are provided by statute: (1) ordinary mandamus (§ 1085) and (2) administrative mandamus (§ 1094.5).  Challenge of an agency's action or decision via proceeding for a writ of administrative mandamus is available if the decision was "made as a result of a proceeding in which by law a hearing is required to be given …."  (§ 1094.5, subd. (a); accord, *Keeler v. Superior Court* (1956)

---

[8]    The administrative record showed that, between October 9, 2008, and February 2, 2011, Nathan was given detention for failing to submit homework on one occasion, leaving class without permission on one occasion, truancy on one occasion, tardiness on five occasions, and failing to serve detention on four occasions.  He was also warned for using an electronic signaling device once and for violating the dress code once.

[9]    "The writ of mandamus may be denominated the writ of mandate."  (§ 1084.)

6.

46 Cal.2d 596, 599.) In general, "quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate." (*Bunnett*, *supra*, at p. 848; see also *Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 ["Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts."].)

Whether Education Code section 48432.5 requires a hearing is a question of law subject to de novo review on appeal. (See *Pomona Police Officers' Assn. v. City of Pomona*, *supra*, 58 Cal.App.4th at p. 584.) The fundamental objective of statutory construction is to ascertain legislative intent so as to effectuate the purpose of the law. (§ 1859; *Lewis C. Nelson & Sons, Inc. v. Clovis Unified School Dist.* (2001) 90 Cal.App.4th 64, 69.) To ascertain this intent, we examine the statutory language and give the words "a plain and commonsense meaning." (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) However, we do not view words in isolation and consider "'the entire substance of the statute'" to deduce the true meaning. (*Ibid.*; see also *Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 ["'[T]o seek the meaning of a statute is not simply to look up dictionary definitions and then stitch together the results. Rather, it is to discern the sense of the statute, and therefore its words, *in the legal and broader culture*. Obviously, a statute has no meaning apart from its words. Similarly, its words have no meaning apart from the world in which they are spoken.'"].)

Education Code section 48432.5 states, in pertinent part:

> "The governing board of each high school or unified school district which assigns pupils to continuation schools shall adopt rules and regulations governing procedures for the involuntary transfer of pupils to continuation schools. [¶] Such rules and regulations shall provide that written notice be given to the pupil and the pupil's parent or guardian informing them of the opportunity to request a meeting with a designee of the district superintendent prior to the transfer. [¶] At the meeting, the pupil or the pupil's parent or guardian shall be informed of the specific

facts and reasons for the proposed transfer and shall have the opportunity to inspect all documents relied upon, question any evidence and witnesses presented and present evidence on the pupil's behalf. The pupil may designate one or more representatives and witnesses to be present with him or her at the meeting. [¶] … [¶] The decision to transfer shall be in writing, stating the facts and reasons for the decision, and sent to the pupil and the pupil's parent or guardian…."

While the word "meeting" is broadly defined as "[t]he act or process or an instance of coming together; an encounter" or "[a]n assembly or gathering of people, as for a business, social, or religious purpose" (American Heritage Dict. (4th ed. 2006) p. 1093, col. 1), Education Code section 48432.5 specifies that a meeting affords the aggrieved student and his or her parent or guardian the chance to inspect and challenge the school's or district's documentary evidence, question the school's or district's witnesses, and present his or her own evidence and witnesses. The student may also bring a representative. (Cf. *300 DeHaro Street Investors v. Department of Housing & Community Development* (2008) 161 Cal.App.4th 1240, 1250 ["Where … an agency makes a decision based upon one party's unilateral submissions of information and documents, without taking and considering evidence from opposing parties, no hearing occurs within the meaning of section 1094.5."].) In other words, a meeting under Education Code section 48432.5 is the type of "adversarial hearing grounded in due process" contemplated by Code of Civil Procedure section 1094.5. (*300 DeHaro Street Investors*, *supra*, at p. 1251; see also *Eureka Teachers Assn. v. Board of Education* (1988) 199 Cal.App.3d 353, 362 ["It is not necessary that a *specific* provision for a hearing and taking of evidence be stated for … section 1094.5 to apply."].)

Moreover, once the student or his or her parent or guardian requests the meeting, the statute does not expressly confer on the school or district the discretion to decline. (Cf. *Keeler v. Superior Court*, *supra*, 46 Cal.2d at p. 599; *Taylor v. State Personnel Bd.* (1980) 101 Cal.App.3d 498, 502-503 [the respondent "'*shall make an investigation with or without a hearing as it deems necessary*'" under former Gov. Code, § 19576]; *Weary*

8.

*v. Civil Service Com.* (1983) 140 Cal.App.3d 189, 195 [the respondent "'may, *at its discretion*, grant a hearing'" under local civil service rule].)  The fact that the meeting must first be requested does not render judicial review under section 1094.5 improper.  (See, e.g., *Boliou v. Stockton Unified School Dist.* (2012) 207 Cal.App.4th 170, 172; *Wilmot v. Commission on Professional Competence* (1998) 64 Cal.App.4th 1130, 1138-1139 [review under § 1094.5 proper where statutory provisions governing dismissal or suspension of teachers require adjudicatory hearing upon request or demand].)

We conclude that Education Code section 48432.5 requires a hearing upon request to determine whether a student should be involuntarily transferred to continuation school.  Therefore, administrative actions made pursuant to this statute are subject to judicial review under section 1094.5.[10]

**III.    Education Code section 48432.5 does not demand reasonable exhaustion of all other means of correction before a student can be involuntarily transferred to continuation school**

Education Code section 48432.5 states, in pertinent part:

> "A decision to transfer the pupil involuntarily shall be based on a finding that the pupil … committed an act enumerated in Section 48900 …. [¶] … [¶]  Involuntary transfer to a continuation school shall be imposed only when other means fail to bring about pupil improvement …."

In accordance with the fundamental rule of statutory construction (§ 1859), we examine the "usual, ordinary meaning" of the statutory language (*SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 469).  The adjective "other" is usually defined as "[b]eing the remaining one of two or more," "[b]eing the remaining ones of several," "[a]dditional," and "extra."  (American Heritage Dict., *supra*, p. 1246,

---

[10]    CUSD argues that the parties' reliance on and the superior court's acceptance of extra-record evidence "[is] a reflection of the fact that review under section 1085 is more appropriate …."  We reject this proposition because section 1094.5 does permit extra-record evidence under certain circumstances.  (See § 1094.5, subd. (e); *Eureka Citizens for Responsible Government v. City of Eureka* (2007) 147 Cal.App.4th 357, 367.)

cols. 1 & 2.) "Other" is not synonymous with the adjective "all," which is usually defined as "[b]eing or representing the entire or total number, amount, or quantity," "[c]onstituting, being, or representing the total extent or the whole," and "[e]very." (*Id.* at p. 45, col. 2.) Furthermore, nothing in Education Code section 48432.5 compels us to replace the ordinary meaning of "other" with that of "all." Thus, we cannot accept Nathan's argument that the statute requires reasonable exhaustion of *all* other means of correction without violating the cardinal rule that courts cannot "insert what has been omitted …." (§ 1858; accord, *Los Angeles County Metropolitan Transportation Authority v. Alameda Produce Market, LLC* (2011) 52 Cal.4th 1100, 1108; *People v. Guzman* (2005) 35 Cal.4th 577, 587.)[11]

Nathan asserts that his interpretation harmonizes Education Code section 48432.5 with similar provisions contained in Education Code sections 48900.5 and 48915, which relate to suspensions and expulsions, respectively. We disagree. Education Code section 48900.5, subdivision (a), states, in pertinent part: "Suspension … shall be imposed only when other means of correction fail to bring about proper conduct." Education Code section 48915, subdivision (b), reads, in pertinent part: "A decision to expel a pupil … shall be based on a finding of one … of the following: [¶] [o]ther means of correction are not feasible or have repeatedly failed to bring about proper conduct."

---

**11**     In a case involving statutory interpretation of Government Code section 3568, the Second Appellate District acknowledged that the phrase "other means" could be construed by an administrative agency to mean either *some* other means or *every* other means. (See *Regents of University of California v. Public Employment Relations Bd.* (1986) 177 Cal.App.3d 648, 654.) Nonetheless, the court recognized that "[w]here statutory language is susceptible to more than one interpretation, reasonable interpretations are to be favored over unreasonable interpretations." (*Ibid.*) In the instant case, we cannot reasonably assume that the Legislature intended that school administrators exhaust every other means of correction before they could involuntarily transfer a student to continuation school.

The plain language of these statutes does not require a school or district to exhaust *all* other corrective means before it could suspend or expel a student.**12**

**IV.    The substantial evidence test is proper because an involuntary transfer to continuation school under Education Code section 48432.5 does not substantially affect a fundamental vested right**

In determining whether administrative findings are supported by the evidence, the superior court applies one of two tests:  (1) independent judgment or (2) substantial evidence.  (§ 1094.5, subd. (c).)  The appropriate test depends on the nature of the right affected by the agency's action or decision:

> "'If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence.  [Citations.]  The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings.  [Citation.]  If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence.  [Citations.]'  [Citations.]"  (*Ogundare v. Department of Industrial Relations* (2013) 214 Cal.App.4th 822, 827-828.)

Courts decide whether an administrative decision substantially affects a fundamental vested right on a case-by-case basis.  (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 144.)  "In determining whether the right is fundamental[,] the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the

---

**12**    Nathan cites *Thompson v. Sacramento City Unified School Dist.* (2003) 107 Cal.App.4th 1352, and *Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, as supporting authority.  These cases only stand for the propositions that "the Legislature has expressed a preference that, if possible, misconduct be addressed by means other than suspension" (*Thompson v. Sacramento City Unified School Dist.*, *supra*, at p. 1364) and "suspending and threatening to suspend students without first exhausting other means of correction … frustrate[s] 'the achievement of [this] legislative goal[]'" (*Slayton v. Pomona Unified School Dist.*, *supra*, at p. 550).  They do not call for exhaustion of all other corrective means.

individual in the life situation." (*Ibid.*) "The ultimate question … is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power." (*Frink v. Prod* (1982) 31 Cal.3d 166, 176; cf. *Berlinghieri v. Department of Motor Vehicles* (1983) 33 Cal.3d 392, 397 ["There is little similarity between the analysis applied in determining (1) whether a right is a 'fundamental right' for equal protection/due process purposes on the one hand, and (2) which scrutiny is applicable for administrative review purposes, on the other."].)

We agree with Nathan that access to public education is, at a minimum, a fundamental interest (see *Butt v. State of California* (1992) 4 Cal.4th 668, 685 ["It therefore appears well settled that the California Constitution makes public education uniquely a fundamental concern of the State and prohibits maintenance and operation of the common public school system in a way which denies basic educational equality to the students of particular districts."]; *O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1465 ["[T]here is a fundamental right of equal access to public education …."]; *Steffes v. California Interscholastic Federation* (1986) 176 Cal.App.3d 739, 746 ["The right to public education is a fundamental right under the California Constitution."]), the retention of which "is of substantial importance to [a person] in [his or] her own life situation" (*Berlinghieri v. Department of Motor Vehicles*, *supra*, 33 Cal.3d at pp. 397-398). We conclude, however, that an involuntary transfer to continuation school under Education Code section 48432.5 does not substantially affect this interest. In contrast to a suspension or expulsion, an involuntary transfer does not deny access to public education.[13] (Cf. Ed. Code, § 48925, subd. (b) ["'Expulsion' means removal of a pupil

---

[13] For this reason, we find inapposite Opinion No. 97-903 of the Office of the Attorney General, which concluded that "a school district's proposed zero tolerance policy which would mandate *expulsion* for a first offense involving possession of a controlled substance or alcohol would be inconsistent with state law governing *expulsions* of school students …." (80 Ops.Cal.Atty.Gen. 348, 354 (1997), italics added.)

12.

from (1) the immediate supervision and control, or (2) the general supervision, of school personnel …."]; *id.*, subd. (d) ["'Suspension' means removal of a pupil from ongoing instruction for adjustment purposes."].)  While the student may be moved from a regular school, he or she still receives educational instruction at an alternative venue:  by law, continuation schools are required to provide "[a]n opportunity for pupils to complete the required academic courses of instruction to graduate from high school" (Ed. Code, § 48430), "suitable instruction for the various individuals for whose benefit they are established" (*id.*, § 48435), and "[a] program designed to meet the educational needs of each pupil" (*id.*, § 48430).  Therefore, the substantial evidence test is proper.[14]

Nathan contends that judicial oversight via the independent judgment test is necessary because "bureaucratic inertia" leads school administrators to issue arbitrary, inconsistent, and unjust disciplinary decisions.  His contention fails to recognize the deference to be accorded to a school administrator's decision to discipline a student. (*Granowitz v. Redlands Unified School Dist.* (2003) 105 Cal.App.4th 349, 354.)  Our Supreme Court explained:

> "[T]he 'primary duty of school officials and teachers … is the education and training of young people.  A State has a compelling interest in assuring that the schools meet this responsibility.  Without first establishing discipline and maintaining order, teachers cannot begin to educate their students….' [Citations.]  [¶]  At school, events calling for discipline are frequent occurrences and sometimes require 'immediate, effective action.' [Citation.]  To respond in an appropriate manner, "'teachers and school administrators must have broad supervisory and disciplinary powers.'" [Citations.]"  (*In re Randy G.* (2001) 26 Cal.4th 556, 562, 563; see also *Reeves v. Rocklin Unified School Dist.* (2003) 109 Cal.App.4th 652, 664-665 ["'[D]aily administration of public education is committed to school officials and … such responsibility carries with it the inherent authority to

---

**14**    Because the superior court was not obligated to exercise its independent judgment on the evidence, we need not address Nathan's allegation that the weight of the evidence did not support CUSD's administrative decision.

prescribe and control conduct in the schools.  The interest of the state in the maintenance of its education system is a compelling one ….'"].)

## **DISPOSITION**

The judgment of the superior court is affirmed.  Costs on appeal are awarded to respondent.

_____
Kane, Acting P.J.

WE CONCUR:


_____
Peña, J.


_____
LaPorte, J.[*]

---

[*]     Judge of the Kings Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.